# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02519-WYD-MJW


TELECOMMUNICATIONS SYSTEMS, INC., a Maryland company,

       Plaintiff,

v.


TRACBEAM, L.L.C., a Colorado limited liability company,

       Defendant.

---

### Defendant TracBeam, L.L.C.'s
### Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1)

---

## Table of Contents

I.      Introduction.................................................................................................................1

II.     Facts .........................................................................................................................2

III.    Argument ..................................................................................................................3

      A.      TCS has failed to allege a case or controversy surrounding direct
           or indirect infringement by TCS. ...................................................................3

            1.      There is no justiciable controversy as to whether TCS
                directly infringes. .............................................................................4

            2.      There is no justiciable controversy that TCS indirectly infringes ..............7

      B.      The indemnification demands to TCS from Sprint and MetroPCS
           are insufficient to confer standing on TCS. ........................................................11

IV.     Conclusion ...............................................................................................................15

## Table of Authorities

**Cases**

*ABB Inc. v. Cooper Indus., LLC*, 635 F.3d 1345 (Fed. Cir. 2011) ...................................... 5, 11, 12

*Arris Group, Inc. v. British Telecomms. PLC,* 639 F.3d 1368 (Fed. Cir. 2011) .............. 1, 2, 4, 11

*Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731 (Fed. Cir. 1988) ............... 13

*Ashcroft v. Iqbal,* 129 S. Ct. 1937 (U.S. 2009) ................................................................. 9

*Baker Hughes Oilfield Operations, Inc. v. Reedhycalog UK, Ltd.,*
2008 U.S. Dist. Lexis 9323 (D. Utah Feb. 5, 2008) ........................................................ 6

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (U.S. 2007) .................................................... 7

*Binford v. United States,* 436 F.3d 1252 (10th Cir. 2006) ................................................ 14

*City of Aurora v. PS Sys.,* 2008 U.S. Dist. Lexis 82053 (D. Colo. Sept. 19, 2008) ...................... 6

*Global-Tech Appliances, Inc. v. SEB S.A.,* 131 S. Ct. 2060 (2011) ...................................... 9

*Hewlett-Packard Co. v. Acceleron LLC,* 587 F.3d 1358 (Fed. Cir. 2009) ................................ 5

*MedImmune, Inc. v. Centocor, Inc.,* 409 F.3d 1376 (Fed. Cir. 2005) ..................................... 4

*MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118 (2007) ......................................... 1, 2, 4, 5

*MetroPCS Wireless, Inc. v. Telecommunication Systems, Inc.,*
1:09-cv-00601-WDQ (D. Md.) ............................................................................. 2, 11, 13, 14

*MetropPCS Wireless, Inc. v. Telecomms. Sys.,*
2009 U.S. Dist. Lexis 97884 (D. Md. Oct. 19, 2009) ..................................................... 14

*Microchip Tech. Inc. v. Chamberlain Group,* 441 F.3d 936 (Fed. Cir. 2006) ............................. 2

*Micron Tech., Inc. v. Mosaid Techs., Inc.,* 518 F.3d 897 (Fed. Cir. 2008) ................................ 6

*Nat'l Coupling Co. v. Press-Seal Gasket Corp.,* 323 F.2d 629 (7th Cir. 1963) .......................... 10

*Nippon Elec. Glass Co., Ltd. v. Sheldon,* 489 F. Supp. 119 (S.D.N.Y. 1980) ........................... 10

*Ours Tech., Inc. v. Data Drive Thru, Inc* 645 F. Supp. 2d 830 (N.D. Cal. 2009). ..................... 12

*Pace v. Swerdlow,* Civ. No. 06-4157, 519 F.3d 1067 (10th Cir. 2008) ................................... 14

*Powertech Tech. Inc. v. Tessera, Inc.*,
   2011 U.S. App. Lexis 19951 (Fed. Cir. Sept. 30, 2011) ........................................................ 10

*Sticker Indus. Supply Corp. v. Blaw-Knox Co.,* 367 F.2d 744 (7th Cir. 1966) ............................. 9

**Rules**

Fed. R. Civ. P. 12 ....................................................................................................... 2, 15

**Statutes**

35 U.S.C. § 271 ............................................................................................................... 7

## I.    Introduction

The Court should dismiss this action under Federal Rule of Civil Procedure 12(b)(1)

because plaintiff Telecommunication Systems, Inc. ("TCS") lacks standing to bring its

declaratory-judgment action for a determination of non-infringement and invalidity of patents

owned by TracBeam, L.L.C. ("TracBeam").  None of TCS's allegations—whether alone or in

combination—enables TCS to carry its burden of demonstrating a "'substantial controversy,

between parties having adverse legal interests, of sufficient immediacy and reality to warrant the

issuance of a declaratory judgment.'" *Arris Group, Inc. v. British Telecomms. PLC,* 639 F.3d

1368, 1373 (Fed. Cir. 2011) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127

(2007)).

First, TCS alleges that there is a justiciable controversy over TCS's infringement of

TracBeam's patents because "TracBeam sent a letter notifying TCS of its patent portfolio."

(Compl. ¶ 12) That letter is the only interaction between TCS and TracBeam alleged in the

Complaint.  But this six-sentence letter simply advertises TracBeam's international patent

portfolio.  There is no accusation that TCS infringes, no hint of litigation, no identification of any

of TCS's products, services, or customers, and no suggestion of a legal dispute between

TracBeam and TCS.

Second, TCS alleges that there is a justiciable controversy over TCS's infringement of

TracBeam's patents because TCS supplies location-based products and services to certain

defendants in a patent-infringement action by TracBeam in Texas.  But controlling law holds that

a patent holder's suit against a supplier's customers does not, in and of itself, confer standing

upon the supplier to sue the patent holder.  Instead, there must exist separate, adverse actions by

the patent holder that specifically implicate the supplier (e.g., the patent holder's identification of

the supplier's products in letters to customers).  No such actions by TracBeam against TCS are alleged here.

Third, TCS alleges that adverse legal interests exist between TCS and TracBeam because certain defendants in the litigation in Texas who are TCS's customers "have tendered indemnification demands to TCS." (Compl. ¶ 11)  But while an indemnification demand may create an adverse <u>economic</u> interest, an "adverse economic interest . . . is not a legally cognizable interest sufficient to confer declaratory judgment jurisdiction." *Microchip Tech. Inc. v. Chamberlain Group*, 441 F.3d 936, 943 (Fed. Cir. 2006).  For an adverse legal interest possibly to exist, TCS would have to plead that it is legally obliged to honor the indemnification demands arising specifically out of the litigation in Texas.  TCS makes no such claim and, in the past, TCS has vigorously disputed any legal obligation to indemnify MetroPCS for patent litigation arising out of location-based technology. *See MetroPCS Wireless, Inc. v. Telecommunications Systems, Inc.*, WDQ-09-0601 (D. Md.).

In sum, there are no "adverse legal interests" between TCS and TracBeam "'of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Arris Group,* 639 F.3d at 1373 (quoting *MedImmune*, 549 U.S. at 127).  TCS's Complaint should therefore be dismissed under Fed. R. Civ. P. 12(b)(1).

## II.   Facts

In February 2011, TracBeam filed suit in the United States District Court for the Eastern District of Texas (6:11-cv-0096) ("Texas Action") for infringement of U.S. Patent Nos. 7,764,231("'231 Patent") and 7,525,484 ("'484 Patent").  Defendants included six companies as well as MetroPCS[1] and Sprint.[2]  (Compl. ¶ 10)  The '231 and '484 Patents contain detailed

---

[1] "MetroPCS" collectively refers to MetroPCS Communications, Inc. and MetroPCS Wireless, Inc.

method and systems claims that focus on using hybrid location techniques to find the positions of mobile stations. *See* Exhibits 1 & 2 to Compl.

Plaintiff TCS is not a party to the Texas Action. (Compl. ¶ 9)  But TCS asserts that it has a connection to that litigation because TCS has sold products and services "for determining the locations of wireless mobile devices" to MetroPCS and Sprint, who are defendants in the Texas Action. (*Id.* ¶ 10)  Moreover, at some unspecified time, MetroPCS and Sprint "tendered indemnification demands to TCS." (*Id.* ¶ 11)  TCS has not asserted that it is legally obliged or otherwise inclined to honor these indemnification demands.

The only alleged interaction between TracBeam and TCS is a letter that TracBeam sent in August 2011 to TCS that described TracBeam's "novel systems for determining the location of mobile stations." (Exhibit 3 to Compl.)  The letter referenced "TracBeam's patent portfolio, including U.S Patent Nos. 6,249,252; 7,274,332; 7,298,327; 7,525,484; and 7,764,231" and "Canadian Patent No. 2,265,875 and United Kingdom Patents 2,384,952; 2,405,292; 2,337,386; 2,354,387; and 2,354,129." *Id.*  The letter did not claim that TCS infringed any of TracBeam's patents, did not focus on the patents at issue in the Texas Action, made no demands of TCS, did not identify any products or customers of TCS, and did not mention any litigation.

Nonetheless, TCS filed this action for declaratory judgment in September 2011, seeking declarations of non-infringement and invalidity regarding the '231 and '484 Patents. (Compl. Counts 1-4)

## III.   Argument

### A.   TCS has failed to allege a case or controversy surrounding direct or indirect infringement by TCS.

---

[2] "Sprint" collectively refers to Sprint Nextel Corporation, Sprint Spectrum L.P., Nextel of California, Inc., Nextel Communications of the Mid-Atlantic, Inc., Nextel of New York, Inc., Nextel South Corp., Nextel of Texas, Inc., and Next West Corp.

"An Article III case or controversy exists when 'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Arris Group,* 639 F.3d at 1373 (quoting *MedImmune,* 549 U.S. at 127 (some internal quotation marks and citation omitted)).   The relief requested must not be an "opinion advising what the law would be upon a hypothetical state of facts."[3]  *Id.*

TCS bears the burden of proving that such a substantial controversy exists.  *See Arris Group,* 639 F.3d at 1373 ("The burden is on the party claiming declaratory judgment jurisdiction to establish that an Article III case or controversy existed at the time the claim for declaratory relief was filed.").  In trying to satisfy this burden, TCS claims that its "products and services for determining the locations of wireless mobile devices have not infringed and do not infringe, either directly or indirectly, any valid claim of the '231 or '484 patents, either literally or under the doctrine of equivalents." (Compl. ¶ 14)  But TCS has failed adequately to allege that TracBeam takes a position contrary to that of TCS.  Consequently, TCS has failed to identify adverse legal interests between TCS and TracBeam, whether regarding direct or indirect infringement.

## 1.   There is no justiciable controversy as to whether TCS directly infringes.

The only allegation that could potentially relate to a legal controversy of direct infringement by TCS is that "on August 30, 2011, TracBeam sent a letter notifying TCS of its patent portfolio." (Compl. ¶ 12)  But that six-sentence letter did not create adverse legal interests, of sufficient immediacy and reality, to confer standing upon TCS.  In particular, in that letter:

---

[3] "Whether an actual case or controversy exists so that a district court may entertain an action for a declaratory judgment of non-infringement and/or invalidity is governed by Federal Circuit law." *MedImmune, Inc. v. Centocor, Inc.*, 409 F.3d 1376, 1378 (Fed. Cir. 2005), *rev'd on other grounds*, 549 U.S. 118 (2007).

4

- There is no suggestion that TCS infringes any of TracBeam's patents.
- TracBeam makes no requests or demands of TCS.
- TracBeam does not identify any specific products or services of TCS.
- TracBeam does not suggest that TCS needs to license the patents.
- There is no mention of a lawsuit against TCS or anyone else.
- TracBeam does not mention any of the defendants in the Texas Action or any customers of TCS.
- TracBeam does not single out the patents asserted in the Texas Action.  Instead, the letter mentions eleven patents in the United States, Canada, and the U.K. as well as patents that have yet to be issued (and which TCS could not possibly infringe). The Complaint merely alleges that TracBeam's letter "notif[ied] TCS of its [TracBeam's] patent portfolio." (Compl. ¶ 12).
- The letter was not sent by an attorney.

In addition, the Complaint does not allege any other communications at any point in time between TCS and TracBeam beyond these six sentences.

The benign letter from TracBeam in which it publicizes its patent portfolio and takes no position regarding TCS's products or services is distinct from those communications that have created an adverse legal interest sufficient to confer standing.  *Contrast MedImmune, Inc. v. Genentech, Inc.* 549 U.S. at 121 (letter alleged that respondent's patent covered a specific product produced by petitioner and that petitioner should begin paying royalties by a certain date); *ABB Inc. v. Cooper Indus., LLC*, 635 F.3d 1345, 1347 (Fed. Cir. 2011) (letters from patent holder described company's activities as "material breach" and put company "on notice that [defendant] will vigorously defend its rights should [the manufacturer] attempt to make products covered by one or more of [defendant's] patents."); *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1363 (Fed. Cir. 2009) (letters from patent holder stating that its patents related to specific products of plaintiff, imposing deadlines by which plaintiff should respond, and indicating that a lack of response from plaintiff would be interpreted as a lack of interest in

dialogue regarding the patents); *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 899-900 (Fed. Cir. 2008) (patent holder (1) "sent a warning letter strongly suggesting that Micron should license its technology" in June 2001 (2) "sent follow-up letters" in December 2001, March 2002, and July 2002, (3) sued three of the four companies that manufactured the accused product (Micron was the fourth company and the only one not yet sued), and (4) publicly stated that it intended to continue litigation); *City of Aurora v. PS Sys.,* 2008 U.S. Dist. Lexis 82053, at *26 (D. Colo. Sept. 19, 2008) (communications that if plaintiff rejected defendant's licensing offer, defendant would be "forced to litigate" and that, "in the event of litigation," plaintiff risked considerable damages).[4]

Nonetheless, TCS's Complaint alleges that, when considered in context, TracBeam's letter is more substantial than its words because TracBeam notified certain defendants in the Texas Action of TracBeam's patents "over ten years before they matured into issued patents." (Compl. ¶ 13)   According to the Complaint, this constitutes a "pattern of notification and subsequent initiation of a lawsuit" surrounding direct infringement that results in a controversy of "sufficient immediacy and reality to warrant declaratory relief." *Id.*

But according to TCS's own allegations, "over ten years" transpired between (1) TracBeam's communications to certain defendants in the Texas Action, and (2) litigation against those defendants.  (Compl. ¶ 13)  The Complaint in the Texas Action more specifically indicates that TracBeam communicated with three defendants regarding its patent applications in 1997 or 1998—thirteen years before a lawsuit was filed. (Texas Action, Am. Compl. ¶¶ 25, 32,

---

[4] For an example of a case where communications from a patent holder were insufficient to confer standing upon the recipient of the communications, *see Baker Hughes Oilfield Operations, Inc. v. Reedhycalog UK, Ltd.,* 2008 U.S. Dist. Lexis 9323, at *7-*8 (D. Utah Feb. 5, 2008) (finding no subject-matter jurisdiction because "[w]hile ReedHycalog had mailed several letters notifying Baker Hughes of issued and pending patents, these letters did not indicate that ReedHycalog had taken a position regarding infringement by Baker Hughes....").

36 (attached as Exhibit A))  Furthermore, there are no allegations (either by TCS or in

TracBeam's complaint in the Texas Action) that TracBeam ever contacted the remaining

defendants in the Texas Action prior to filing suit.  Consequently, TCS's allegations do not

indicate a relevant pattern by TracBeam; to the contrary, TCS's allegations indicate notification

to only some of the defendants in the Texas Action with no litigation for over ten years.

Accordingly, TCS's own allegations indicate that there is no immediacy to any alleged dispute.[5]

Consequently, TCS's allegations indicate that there is no legal dispute surrounding direct

infringement of any immediacy that would warrant declaratory relief.

### 2.   There is no justiciable controversy that TCS indirectly infringes.

To give rise to contributory infringement, the supplier's actions must satisfy the

following statutory requirements: (a) the supplier's product was used to commit acts of direct

infringement; (b) the product's use constituted "a material part of the invention;" (c) the supplier

knew its product was "especially made or especially adapted for use in an infringement" of the

patent; and (d) the product is "not a staple article or commodity of commerce suitable for

substantial noninfringing use."  35 U.S.C. § 271(c).  While TCS need not allege that it is a

contributory infringer, there is no credible, specific allegation that TCS's products or services

constitute any part, let alone a "material part," of the accused methods or systems, or any

---

[5] TCS's Complaint further alleges "[o]n information and belief" that "TracBeam initiated a
lawsuit against Cellco, Sprint, and AT&T when they refused to take a license to the patents."
(¶ 13).  To the extent that TCS is alleging that TracBeam filed suit against Cellco, Sprint, and
AT&T soon after those companies declined a license, this is an implausible allegation and must
be disregarded.  It posits a scenario where TracBeam asked each of these companies to take a
license over 10 years ago, each of the  Cellco, Sprint, and AT&T then took over a decade to
ponder their respective decisions, that TracBeam waited over a decade for each of their refusals,
that each suddenly woke up and presented to TracBeam their decision to decline a license, and
only upon receiving their formal refusals more than a decade after making its offer did
TracBeam decide to file suit. The Court should not accept this allegation in the Complaint
because it "stops short of the line between possibility and plausibility." *Bell Atl. Corp. v.
Twombly*, 550 U.S. 544, 557 (U.S. 2007).

allegation that could be used to infer that TCS might satisfy any of the statutory requirements for contributory infringement. Nor is there any allegation that anyone else, such as Sprint or MetroPCS, has asserted that what TCS sells would satisfy these statutory requirements (e.g., an assertion by Sprint that a component supplied by TCS lacks a substantial, non-infringing use).

TCS's allegations regarding similarities between (1) its products and services and (2) the '231 and '484 Patents are based upon generalities regarding TCS's business and the patents, and those generalities fail to satisfy basic pleading requirements. The patents' claims specifically describe <u>hybrid</u>, wireless location technologies, which may use a combination, for example, of GPS, cell-tower fix, triangulation, and/or time difference of arrival.[6] *See* Exhibits 1 & 2 to Compl. But there is no allegation that TCS's products or services are dependent on hybrid

---

[6] For example, claim 1 of the '231 Patent provides as follows:
"A method for locating each terrestrial mobile station of a plurality of terrestrial mobile stations, M, wherein said method uses wireless signal measurements obtained from one or more transmissions between said terrestrial mobile station M and one or more of a plurality of terrestrial communication stations, each terrestrial communication capable of at least one of: wirelessly detecting said terrestrial mobile station M, and wirelessly being detected by said terrestrial mobile stations M, comprising:
for each of the mobile stations M perform the following steps by computational machinery: receiving first and second location related information, respectively, from computational machinery performing first and second mobile station location estimation determiners, wherein said location estimation determiners provide different geographical indications of an unknown location of said mobile station M when said location estimation determiners are supplied with corresponding input data obtained using wireless signal measurements obtained by transmissions between said mobile station M and the communication stations;
wherein, when available, the first location related information includes at least a first geographical indication for a location of the mobile station M;
wherein, when available, the second location related information includes at least a second geographical indication for the location of the mobile station M;
wherein for locating the mobile station M in at least one location, said second geographical indication for M is obtained and is dependent upon a delay time of a signal from at least one non-terrestrial wireless transmitter, not supported on the Earth's surface, to M for determining a spatial range for M; and
outputting a resulting location estimate of the mobile station M, a determination of said resulting location estimate is dependent upon at least one of (a) and (b) following: (a) a first value obtained from said first location related information, and (b) a second value obtained from said second location related information." Exhibit 1-3 to Compl. at 170-71.

wireless location techniques.  Instead, the Complaint merely alleges that (1) TCS is a "vendor for products and services for determining the locations of wireless mobile devices" to MetroPCS and Sprint, and (2) the Texas Action focuses on "products and services for determining the locations of wireless mobile devices." (Compl. ¶ 10)  These vague allegations regarding the connection between TCS's business and the Texas Action fall short of basic pleading requirements and fail to implicate TCS in the Texas Action.  *See Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (U.S. 2009) ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (internal quotation marks and brackets omitted)).[7]

Furthermore, a patent holder's lawsuit against a supplier's customers does not, in and of itself, create an implication of indirect infringement against the supplier; instead, there must be additional activity by the patent holder that creates a "controversy between the patentee and the supplier as to the supplier's liability for induced or contributory infringement based on the alleged acts of direct infringement by its customers." *Arris Group*, 639 F.3d at 1375.

In those cases where courts have held that a supplier has standing after a patent holder has sued the supplier's customers, the patent holder has directly implicated the supplier.  For example, in *Arris Group*, the Federal Circuit used the following cases as examples in which "an implicit assertion of indirect infringement by a supplier may arise" after accusations of direct infringement have been leveled against the supplier's customers:  "*Sticker Indus. Supply Corp. v. Blaw-Knox Co.,* 367 F.2d 744, 747 (7th Cir. 1966) (where declaratory plaintiff's product allegedly was not a staple item of commerce and <u>patent holder had informed plaintiff's customers</u>

---

[7] Nor does the Complaint suggest a controversy over induced infringement, as TCS has not alleged that there is a controversy over whether it induced acts of patent infringement and also either that(1) it had knowledge that any induced acts constituted patent infringement, or (2) it was willfully blind towards patent infringement of Sprint or MetroPCS. *See Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2070 (2011) .

that unlicensed use of plaintiff's product would infringe its method patent, Article III case or

controversy existed because plaintiff "had good reason to fear that it might be liable for

contributory infringement"); *Nat'l Coupling Co. v. Press-Seal Gasket Corp.*, 323 F.2d 629, 630,

632-33 (7th Cir. 1963) (actual controversy existed regarding indirect infringement where

defendant "charged contributory infringement" by sending plaintiff's customer a letter alleging

that plaintiff's gasket product, when installed on concrete pipe, infringed defendant's claimed

'Gasket and Pipe End Construction for Bell and Spigot Pipe' device); *Nippon Elec. Glass Co.,*

*Ltd. v. Sheldon*, 489 F. Supp. 119, 122 (S.D.N.Y. 1980) ('Once defendant accused Sony and

Panasonic of direct infringement due to their use of plaintiff's product, plaintiff had reason to

fear that it could be sued as a contributory infringer. " *Arris Group*, 639 F.3d at 1375-76 n.6 & 7

(emphases added).  In each of the preceding cases, the patent holder had specifically implicated

the supplier when targeting the customers.

Recent cases from the Federal Circuit further illustrate that a supplier's standing against a

patent holder requires more than a patent holder's lawsuit against the supplier's customers. *See,*

*e.g., Powertech Tech. Inc. v. Tessera, Inc.*, 2011 U.S. App. Lexis 19951, at *7-*8, *15 (Fed. Cir.

Sept. 30, 2011) (holding that Powertech had standing to pursue declaratory judgment against

patent holder where (1) patent holder licensed its technology to Powertech, but (2) patent holder

declared in actions before federal court and International Trade Commission against Powertech's

customers that license with Powertech was invalid (and that, by implication, sales of patented

technology by Powertech were infringing) due to Powertech's alleged failure to pay appropriate

royalties); *Arris Group*, 639 F.3d at 1381 ("BT's infringement accusations against Cable One

carried the implied assertion that Arris was committing contributory infringement, and BT

repeatedly communicated this implicit accusation directly to Arris during the course of a

protracted negotiation process.")[8]; *ABB Inc. v. Cooper Indus., LLC*, 635 F.3d at 1346-47 (holding that company ABB Inc. had standing to pursue declaratory judgment against patent holder where (1) patent holder had previously sued ABB for manufacturing infringing dielectric fluid, and (2) after settlement between patent holder and ABB, ABB outsourced the manufacture of dielectric fluid to third party and patent holder then wrote to both ABB and third party that outsourcing was a "material breach" of the settlement and that patent holder would "vigorously defend its rights").

In contrast to the above cases, there is no allegation that TracBeam has directly implicated TCS.  For example, there is no allegation that TracBeam: offered a license to TCS, mentioned TCS in any litigation, or suggested to TCS, TCS's customers, or anyone else that TCS infringes TracBeam's patents.  The only alleged interaction between TCS and TracBeam is a six-sentence letter from TracBeam in which TracBeam describes its international patent portfolio. (Compl. ¶ 12 and Ex. 3)  For the reasons discussed above (*see* III(A)(1)), that benign letter does not create adverse legal interests.

Consequently, TCS's status as a vendor to certain defendants in the Texas Action is inadequate to create adverse legal interests of immediacy and reality between TCS and TracBeam.[9]

---

[8] In *Arris Group*, the defendant's communications with plaintiff included defendant's 118-page infringement presentation that specifically and repeatedly identified plaintiff's equipment (including identifying brand names and/or model numbers of plaintiff's products on at least 26 pages and copying literature from plaintiff's website). *Id.* at 1372.
[9] To borrow TCS's own words from another case (discussed below at III(B)): If "[t]he Texas Plaintiffs ... believed that TCS's products or services infringed their patents, they could, and undoubtedly would, have sued TCS directly." (*MetropPCS Wireless, Inc. v. TCS*, WDQ-09-0601, Memo. in Support of Defendant's Motion to Dismiss at 5 (D. Md.) (D.I. 16) (attached as Exhibit D).

**B. The indemnification demands to TCS from Sprint and MetroPCS are insufficient to confer standing on TCS.**

A supplier's indemnification of customers accused of patent infringement does not, in and of itself, create a legal interest adverse to the patent holder. This is because "[w]ithout an underlying legal cause of action, any adverse economic interest that the declaratory plaintiff may have against the declaratory defendant is not a legally cognizable interest sufficient to confer declaratory judgment jurisdiction." *Microchip Tech.*, 441 F.3d at 943. For example, in *Ours Tech., Inc. v. Data Drive Thru, Inc.*, plaintiff OTI had agreed to indemnify four of its customers who were defendants in a patent suit, though not pursuant to a formal indemnification agreement. The court held that OTI lacked standing to pursue a declaratory-judgment action against the patent holder DDT "[b]ecause OTI's interest in indemnifying these U.S. retailers, as best the court can discern, is to preserve its customer base, DDT is correct that OTI's interest in this action is largely—if not exclusively—economic." 645 F. Supp. 2d 830, 840 (N.D. Cal. 2009) Accordingly, mere requests for indemnification or even actual indemnification of customers is not sufficient to create an adverse legal interest.

To be relevant to the question of standing, an indemnification agreement must give rise to a legal obligation to indemnify the customer in the litigation by the patent holder. *See Arris Group,* 639 F.3d at 1375 ("We have recognized that, where a patent holder accuses customers of direct infringement based on the sale or use of a supplier's equipment, the supplier has standing to commence a declaratory judgment action if … the supplier is obligated to indemnify its customers from infringement liability…."). In support of this statement in *Arris Group*, the Federal Circuit cited cases where indemnification agreements unquestionably applied to the patent litigation at issue. For example, in *ABB Inc. v. Cooper Indus., LLC,* an outsourcing company agreed to indemnify a manufacturer for claims of infringement brought specifically by

12

the patent holder.  635 F.3d 1345, 1347 (Fed. Cir. 2011) ("After signing the settlement, ABB began outsourcing the manufacture of BIOTEMP to Dow Chemicals….ABB also contracted to indemnify Dow against claims of infringement by Cooper."). Likewise, in *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731 (Fed. Cir. 1988), *overruled on other grounds by MedImmune,* 549 U.S. at 127, a customer requested that its supplier provide an indemnification agreement against potential claims by the patent holder, who had recently threatened the customer with litigation. *Id.* at 733, 737. These cases indicate that the legal obligation required to confer standing upon an indemnifier requires more than the existence of a broadly worded indemnification agreement that may not be applicable to the litigation at issue.

In this case, TCS has not even alleged an adverse economic interest because there is no allegation that TCS will honor the indemnification demands from MetroPCS and Sprint. Nor is there any allegation that TCS is required to indemnify MetroPCS or Sprint under any authority. For example, there is no allegation of indemnification agreements between TCS and either MetroPCS or Sprint. *See Microchip Tech.,* 441 F.3d at 944 ("Microchip has not produced any agreement indemnifying a customer against infringement of the patents-in-suit. Thus, Microchip has no legal right to 'clear the air.'").

TCS's prior statements in federal court emphasize that barebone allegations regarding indemnification demands are too speculative to confer standing.  In response to a prior indemnification demand from MetroPCS arising out of patent litigation in the Eastern District of Texas involving location-based technology for cell phones, TCS took the position that its indemnification agreement with MetroPCS did not apply to MetroPCS's dispute with the patent holder. This prompted MetroPCS to seek a declaratory judgment against TCS. *MetroPCS Wireless, Inc. v. Telecommunication Systems, Inc.,* 1:09-cv-00601-WDQ (D. Md.) ("Maryland Action") Compl. ¶¶ 5-6 (D.I. 1)  (attached as Exhibit B) ("MetroPCS' claims arise out of TCS'

13

failure to defend, indemnify and hold harmless MetroPCS....The Federal Plaintiffs' core allegation in the Federal Court Action is that MetroPCS infringes Federal Plaintiffs' patents through MetroPCS' use of LBS service and technology....").[10]   In denying the applicability of its indemnification agreement with MetroPCS, TCS denied that is provided relevant location-based services or technology to MetroPCS or that MetroPCS used any relevant TCS location-based technology or equipment to provide services to its customers.   Maryland Action, Answer ¶ 9 (D.I. 25) (attached as Exhibit C).   Instead, TCS claimed that MetroPCS "uses the services and technology of a competitor."   *Id.* ¶ 9.

TCS further explained that "a central issue that will [be] vetted in the Texas Litigation is how the Texas Plaintiffs allege MetroPCS infringes their patents.   Until this is clear, there is no way to determine whether the Texas Plaintiffs allege that it is MetroPCS's 'use' of TCS products and services that are doing the infringing and, thus, whether the indemnification provision is triggered."   Maryland Action, Reply in Support of Motion to Dismiss at 5 (D.I. 18) (attached as Exhibit D).   TCS emphasized that it "did not sign on to be MetroPCS's insurer of last resort."   *Id.*, Memo. in Support of Defendant's Motion to Dismiss at 4-5 (D.I. 16) (attached as Exhibit E).   The district court largely agreed with TCS's reasoning and dismissed MetroPCS's claims for indemnification and contribution as premature.[11]   *MetropPCS Wireless, Inc. v. Telecomms. Sys.*,

---

[10] Although matters outside the pleadings are presented with this Motion, TracBeam is not requesting that the motion be converted to a Motion for Summary Judgment pursuant to III(A)(2) of the Court's Practice Standards.   The outside matters that are presented are public court filings of which the Court can take judicial notice in ruling upon a motion to dismiss.   *See Pace v. Swerdlow*, Civ. No. 06-4157, 519 F.3d 1067, 1072 (10th Cir. 2008) (finding that on motion to dismiss for failure to state a claim, district court could take judicial notice of materials in state court's file without converting motion into one for summary judgment); *Binford v. United States*, 436 F.3d 1252, 1256 n.7 (10th Cir. 2006) (stating that in resolving a motion to dismiss, the district court is entitled to take judicial notice of matters in the public record).

[11] MetroPCS subsequently dismissed the claim left standing by the Court—MetroPCS's claim that TCS had a duty to defend MetroPCS in the Texas litigation (including controlling

2009 U.S. Dist. Lexis 97884, at *12 (D. Md. Oct. 19, 2009).

This history emphasizes that an indemnification demand need not create adverse legal interests between the potential indemnifier and the patent holder. In the Maryland Action, the patent holder did not have interests adverse to TCS; instead, the patent holder's failure to sue TCS reinforced TCS's position against MetroPCS. *See* Exhibit E at 5 n.5 ("The Texas Plaintiffs do not seem to fear litigation; if they believed that TCS's products or services infringed their patents, they could, and undoubtedly would, have sued TCS directly.").

Accordingly, Sprint's and MetroPCS's indemnification demands to TCS are inadequate to confer standing upon TCS.

## IV.    Conclusion

For the reasons discussed above, TCS has failed to carry its burden of establishing the existence of an Article III case or controversy. The Court should therefore dismiss this action for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

---

MetroPCS's defense). *See* Maryland Action, id. at *14; Notice of Dismissal, (D.I. 82) (attached as Exhibit F).

Dated: October 24, 2011

Respectfully submitted,

By: /s/ Jonathan Gottfried

Gregory S. Dovel
CA State Bar No. 135387
Email: greg@dovellaw.com
Jonathan Gottfried
NY State Bar No. 4269163
Email: rick@dovellaw.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Telephone:  310-656-7066
Facsimile:  310-657-7069


By: /s/ Tracy L. Ashmore
ROBINSON, WATERS &
O'DORISIO, P.C.
1099 18th Street, Suite 2600
Denver, Colorado  80202-1926
Telephone:  (303) 297-2600
Facsimile:  (303) 297-2750
tashmore@rwolaw.com

CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of October 2011, a true and correct copy of the foregoing MOTION TO DISMISS was duly filed via the CM/ECF system and served electronically and/or via U.S. Mail, postage prepaid, addressed to the following:

Victor M. Morales
McElroy, Deutsch, Mulvaney & Carpenter, LLP
5613 DTC Parkway, Suite 1100
P.O. Box 4467
Greenwood Village, CO 80155-4467

Edward A. Pennington
Stephanie D. Scruggs
Sid V. Pandit
Murphy & King
Professional Corporation
1055 Thomas Jefferson Street, Suite 400
Washington, D.C. 20007

_s/ Kristi Kellow_