IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02519-WYD-MJW

TELECOMMUNICATIONS SYSTEMS, INC., a Maryland company,

    Plaintiff,

v.

TRACBEAM, L.L.C., a Colorado limited liability company,

    Defendant.

---

**Defendant TracBeam, L.L.C.'s Reply in Support of Its Motion to Dismiss
Under Fed. R. Civ. P. 12(b)(1)**

# Table of Contents

I.  Introduction..........................................................................................................1

II. Argument..............................................................................................................2

    A.    TCS's new allegations that attempt to correct pleading deficiencies warrant the dismissal of its Complaint. ...........................................................2

    B.    TCS's agreement to indemnify MetroPCS pursuant to a contract does not, by itself, create an adverse legal interest between TCS and TracBeam............................................................................................................3

    C.    TCS has effectively conceded that mere indemnification demands are insufficient to create subject-matter jurisdiction. .................................................6

    D.    TracBeam's letter to TCS, considered with the totality of the circumstances, is insufficient to establish subject-matter jurisdiction....................7

III. Conclusion ........................................................................................................10

# Table of Authorities

**Cases**

*ABB Inc. v. Cooper Indus., LLC*, 635 F.3d 1345 (Fed. Cir. 2011) ...................................................... 4

*Arris Group, Inc. v. British Telecomms. PLC*, 639 F.3d 1368 (Fed. Cir. 2011) ..................... *passim*

*Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.* 846 F.2d 731 (Fed. Cir. 1988) ..................... 4

*Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303 (Fed. Cir. 2011) ............................. 7

*Darrow v. WKRP Mgmt., LLC*,
   09-cv-01613, 2010 U.S. Dist. Lexis 43636 (D. Colo. Apr. 6, 2010) ................................. 1, 2, 3

*Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953 (Fed. Cir. 1987) ....................... 9

*Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377 (Fed. Cir. 2010). ............... 6, 8

*LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 433 F.3d 1373 (Fed. Cir. 2006) ........................... 10

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (U.S. 2007) ...................................................... 7

*Microchip Tech. Inc. v. Chamberlain Grp., Inc.*, 441 F.3d 936 (Fed. Cir. 2006) ......................... 4,6

*Ours Tech., Inc. v. Data Drive Thru, Inc.*, 645 F. Supp. 2d 830 (N.D. Cal. 2009) ..................... 2, 6

*Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329 (Fed. Cir. 2008) ......................................... 8

*Proofpoint, Inc. v. InNova Patent Licensing, LLC*,
   5:11-cv-02288, 2011 U.S. Dist. Lexis 120343 (N.D. Cal. Oct. 17, 2011) ................................. 7

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198 (Fed. Cir. 2005) ............................ 2

*Smith v. Pizza Hut, Inc.*, 694 F. Supp. 2d 1227 (D. Colo. 2010) ............................................. 1, 2, 3

*Vanguard Research, Inc. v. PEAT, Inc.*, 304 F.3d 1249 (Fed. Cir. 2002) ....................................... 9

**Rules**

D.C.COLO.L.Civ.R 7.1 ..................................................................................................................... 3

Fed. R. Civ. P. 12 ....................................................................................................................... 2, 10

## I. Introduction

The Court should dismiss this action because plaintiff Telecommunication Systems, Inc. ("TCS") has attempted to rectify pleading deficiencies by asserting new facts in its Opposition. In particular, TCS has asserted for the first time that, prior to filing this lawsuit, TCS agreed to indemnify MetroPCS pursuant to a contract. (Opp. at 5) As TCS acknowledges, its novel allegations are directed at the "crux of TracBeam's indemnification argument." *Id.* TCS should not be permitted to use its Opposition to amend its Complaint. *See, e.g., Darrow v. WKRP Mgmt., LLC*, 2010 U.S. Dist. Lexis 43636, at *8 (D. Colo. Apr. 6, 2010); *Smith v. Pizza Hut, Inc.*, 694 F. Supp. 2d 1227, 1230 (D. Colo. 2010).

Even if the Court accepts TCS's efforts to amend its pleading via an opposition brief, the Court should still dismiss TCS's Complaint. Contrary to TCS's assertion, a vendor's contractual obligation to indemnify a customer is not sufficient, by itself, to create subject-matter jurisdiction. TCS has cited no case whose holding has adopted that proposition, and the Federal Circuit has suggested that, even when an indemnification agreement exists, subject-matter jurisdiction may only be established where the patent holder has accused "customers of direct infringement based on the sale or use of a supplier's equipment." *Arris Group, Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1375 (Fed. Cir. 2011). There is no such credible allegation in this case.

Nor do the other circumstances relied upon by TCS create subject-matter jurisdiction. In particular, neither TracBeam's interactions with third parties regarding its technology nor TracBeam's six-sentence letter to TCS create "adverse legal interests" that are "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Arris Group*, 639 F.3d at 1373.

The Court should therefore dismiss this action under Fed. R. Civ. P. 12(b)(1).

1

## II. Argument

### A. TCS's new allegations that attempt to correct pleading deficiencies warrant the dismissal of its Complaint.

"Plaintiffs cannot rectify their pleading deficiencies by asserting new facts in an opposition to a motion to dismiss." *Darrow v. WKRP Mgmt., LLC*, 2010 U.S. Dist. Lexis 43636, at *8 (D. Colo. Apr. 6, 2010)). *See also Smith v. Pizza Hut, Inc.*, 694 F. Supp. 2d 1227, 1230 (D. Colo. 2010) (same).

Despite that rule, TCS now alleges for the first time: (1) the existence of an indemnification agreement between MetroPCS and TCS, (2) that TCS agreed in late May 2011 to indemnify MetroPCS pursuant to that agreement, and (3) that TCS made this agreement prior to the filing of this action for declaratory judgment. *See* Ex. 3 to Opp. at ¶¶ 5, 7-8. These allegations appear nowhere in TCS's Complaint. Instead, TCS's Complaint alleged only that "MetroPCS and Sprint have tendered indemnification demands to TCS." Compl. ¶ 11. But the fact that Sprint and MetroPCS made indemnification demands does not imply that: (1) TCS acceded to those demands (in fact, TCS does not allege, even in its Opposition, that it has agreed to Sprint's indemnification demands), (2) that the indemnification demands were made pursuant to an indemnity contract (*see, e.g., Ours Tech., Inc. v. Data Drive Thru, Inc.*, 645 F. Supp. 2d 830, 839 (N.D. Cal. 2009) (refusing to infer existence of indemnification agreement from company's indemnification of customer); or (3) that TCS acceded to those demands before filing this action for declaratory-judgment (*see Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1201 (Fed. Cir. 2005) (analyzing whether standing existed at the time of the filing of the suit)).

TCS's novel allegations are important: As TCS states, "The crux of TracBeam's indemnification argument is that TCS's Declaratory Judgment Complaint does not explicitly state that it has accepted the indemnification requests from either AT&T or MetroPCS in the Texas

2

litigation[1]....However, as set forth in the Declaration of Bruce A. White, TCS has indeed accepted the indemnification request of MetroPCS in the Texas litigation (and has done so as of the date of the filing of the Complaint), rendering this argument moot." (Opp. at 5)

Because TCS is now attempting to add allegations in order to address deficiencies in its Complaint that were raised by TracBeam's Motion to Dismiss, TCS's Complaint should be dismissed. *See, e.g., Darrow*, 2010 U.S. Dist. Lexis 43636, at *9; *Smith*, 694 F. Supp. 2d at 1230 (same).[2] In the event that the Court does not dismiss this Complaint as a result of TCS's new allegations, TracBeam presents reasons in the following sections that warrant the dismissal of the Complaint, even with TCS's new allegations.

### B. TCS's agreement to indemnify MetroPCS pursuant to a contract does not, by itself, create an adverse legal interest between TCS and TracBeam.

TCS has cited no case law in which a court concludes that a vendor's contractual obligation to indemnify a customer is sufficient, by itself, to create subject-matter jurisdiction. The sole authority relied upon by TCS for that proposition is *Arris Group*. (Motion at 3-6) But the Federal Circuit in *Arris Group* did not reach the indemnification issue in that case. *See Arris Group*, 639 F.3d at 1375 ("We need not reach the indemnification issue, for we conclude that, applying the standard articulated by the Supreme Court in *MedImmune*, there is an actual controversy between Arris and BT concerning Arris' liability for, at least, contributory infringement.").

---

[1] In fact, neither TCS's Complaint nor TracBeam's Motion to Dismiss alleges the existence of indemnification requests from AT&T. Presumably, TCS meant "Sprint," instead of "AT&T." If not, TCS is making yet another novel allegation that was contained nowhere in its Complaint.
[2] As an alternative argument mentioned in the Conclusion to its Opposition, TCS requests leave to amend its Complaint. (Opp. at 10) This request should be denied because TCS has not filed a motion to amend, which is required under the Local Rules. *See* D.C.COLO.L.Civ.R 7.1C ("A motion shall not be included in a response or reply to the original motion. A motion shall be made in a separate paper.").

While the discussion of indemnification in *Arris Group* is therefore dicta, even that dicta fails to establish subject-matter jurisdiction in this case. In particular, in *Arris Group*, the Federal Circuit was explicit that two circumstances must be met before a supplier can have standing as a result of its customers' alleged infringement: First, "a patent holder [must] accuse[] customers of direct infringement based on the sale or use of a supplier's equipment." *Arris Group*, 639 F.3d at 1375. Second, either "(a) the supplier is obligated to indemnify its customers from infringement liability, or (b) there is a controversy between the patentee and the supplier as to the supplier's liability for induced or contributory infringement based on the alleged acts of direct infringement by its customers." *Id. See also id.* at 1375 n.5 (explaining that there was no Article III standing in *MicroChip*, 441 F.3d at 944, because both of the following requirements were not satisfied: (1) "there was 'nothing in the record to indicate that [the supplier] ha[d] induced or contributed to infringement,'" and (2) "the supplier 'ha[d] not produced any agreement indemnifying a customer against infringement.'").

The authority cited by the Federal Circuit in *Arris Group* illustrates that, for the first requirement, an accusation of infringement must be directly "based on the sale or use of a supplier's equipment." For example, in addition to *MicroChip*, the Federal Circuit cited, in its discussion on this topic, *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc. See Arris Group*, 639 F.3d at 1375 n.5. In *Arrowhead*, the patent holder had informed a supplier's customer that the supplier is "not licensed to use our process and we would therefore consider any use a direct patent infringement." 846 F.2d 731, 733 (Fed. Cir. 1988). *See also Arris Group*, 639 F.3d at 1375 (citing *ABB Inc. v. Cooper Indus., LLC*, where the patent holder had written directly to the plaintiff that its relationship with its customer constituted "material breach" of a patent settlement and plaintiff wrote directly to the customer that the patent holder would "vigorously defend its rights." 635 F.3d 1345, 1346-47

4

(Fed. Cir. 2011)).

Although TCS now claims that it is obligated to indemnify MetroPCS from infringement liability (thereby addressing the second condition), TCS has failed to appropriately allege the first circumstance: that "a patent holder accuses customers of direct infringement <u>based on the sale or use of a supplier's equipment</u>." *Arris Group*, 639 F.3d at 1375 (emphasis added) (finding standing for the supplier where the patent holder had accused the customer of direct infringement by "explicitly and repeatedly singl[ing] out [the supplier's] products used in [the customer's] network to support its infringement contentions."). Nowhere does TCS credibly allege that TracBeam has accused MetroPCS of infringement based on the sale or use of TCS's equipment. At best, TCS claims in its Complaint that "TracBeam has alleged that at least one customer of TCS infringes the '231 patent in the United States District Court for the Eastern District of Texas with products supplied by TCS." (Compl. ¶ 17; *see also* ¶ 27 (same regarding '484 patent)). But TCS has never indicated—in the Complaint or in its Opposition—where TracBeam made any such allegation regarding TCS. The only documents from TracBeam that TCS has submitted to this Court are TracBeam's Complaints in the Texas Action, TracBeam's letter to TCS, excerpts from TracBeam's patents, and various corporate documents. *See* Exs. 1, 2 & 8-10 to Opp. Yet in none of these documents does TracBeam accuse MetroPCS of direct infringement based on the sale or use of TCS's equipment.[3]

TCS's argument that its acceptance of an alleged indemnification obligation with a customer is sufficient to create standing does not satisfy the dicta regarding standing that is discussed in *Arris*

---

[3] TCS confusingly states in its Opposition that "TracBeam does not dispute TCS' contention that the products/services at issue in the Texas litigation against MetroPCS are supplied by TCS." (Opp. at 4) But how can TracBeam disprove an allegation for which there is no indication that it was ever made? Moreover, it is TCS's burden to prove that standing exists. *See Arris Group*, 639 F.3d at 1373 ("The burden is on the party claiming declaratory judgment jurisdiction to establish that an Article III case or controversy existed at the time the claim for declaratory relief was filed.").

5

*Group*. Furthermore, any test according to which an indemnification agreement automatically creates standing would undermine the rule that "[t]he specific facts of each case must be considered, in deciding whether a declaratory action is warranted." *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1382 (Fed. Cir. 2010).

### C. TCS has effectively conceded that mere indemnification demands are insufficient to create subject-matter jurisdiction.

In its Complaint, TCS stated that "MetroPCS and Sprint have tendered indemnification demands to TCS." (Comp. ¶ 11) Yet in arguing in its Opposition that it has standing, TCS does not rely upon Sprint's indemnification demand.

In fact, TCS effectively concedes TracBeam's argument that mere indemnification demands, independent of a contract, confer standing. Initially, MetroPCS broadly asserts that TracBeam has "provide[d] no legal support" for the conclusion that "barebone allegations regarding indemnification demands are too speculative to confer standing." (Opp. at 6 (quoting Motion at 13)) Yet TCS provides no legal support of its own that indicates that indemnification <u>demands</u> are sufficient, and its claim that TracBeam has provided no support for its contrary position is inaccurate. *See* Motion at 12-13 (citing *Microchip*, 441 F.3d at 944 (finding no possibility of legal dispute where "Microchip has not produced any agreement indemnifying a customer against infringement of the patents-in-suit."); *Ours Tech.*, 645 F. Supp. 2d at 840 (mere indemnification demands from a customer created adverse economic, not legal, interests)). *See also Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1316 (Fed. Cir. 2011) ("In the absence of an indemnity agreement between Starmark and one of these 'customers,' Starmark has, at most, only an economic interest in clarifying its customers' rights under Creative's patents."); *Proofpoint, Inc. v. InNova Patent Licensing, LLC*, 2011 U.S. Dist. Lexis 120343, at *15 (N.D. Cal. Oct. 17, 2011) ("[C]ourts to address the issue have put little faith in mere allegations of indemnity obligations.").

TCS quickly abandons any pretense of an argument that indemnification demands might suffice for standing and falls back upon its new allegations regarding the indemnification agreement. *See* Opp. at 6 ("TCS has clarified that it has accepted its contractual indemnifications obligation to MetroPCS...."). Because the "indemnification demands to TCS from Sprint and MetroPCS," as alleged in the Complaint, "are insufficient to confer standing on TCS" (Motion at 12), the Complaint should be dismissed.

### D. TracBeam's letter to TCS, considered with the totality of the circumstances, is insufficient to establish subject-matter jurisdiction.

TCS argues that, even if its indemnification agreement, by itself, is inadequate to confer standing upon TCS, the "totality of the circumstances" establishes subject-matter jurisdiction. (Opp. at 6 (citing *MedImmune*, 549 U.S. at 127)). For TCS, the "totality of the circumstances" consists of (in addition to the indemnification agreement discussed above), TracBeam's interaction with other entities surrounding its technology and a letter from TracBeam to TCS. Neither of these creates "adverse legal interests" between TCS and TracBeam that are "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Arris Group*, 639 F.3d at 1373.

According to TCS, the sequence of events, which has been illustrated in the following timeline, establishes a "substantial controversy" (Opp. at 7):[4]

---

[4] Sources: Compl. ¶¶ 7-9, 12; Exs. 1-2 to Compl.



As this timeline makes clear, the sequence does not indicate any rash of suits by TracBeam following the issuance of the patents or any connection between correspondence and litigation by TracBeam. To the contrary, the sequence above (based on the allegations and information submitted by TCS) indicates that:

- Approximately fifteen years passed between (1) TracBeam's alleged contacts with AT&T, Verizon, and Sprint, and (2) the filing of TracBeam's suit against those entities.
- Almost two years transpired between the issuance of the '484 patent and the filing of TracBeam's original Complaint.
- Seven months lapsed between the issuance of the '231 patent and the filing of the original Complaint.
- Of the defendants in the Texas Action, there is no allegation that MetroPCS, Peoples, Skyhook, or Google received any prior communications.[5]

TCS attempts to make these events significant by alleging in its Opposition that, "to the best of [its] knowledge, TracBeam attempted to license its supposed technological innovations well before it secured issued patents." (Opp. at 7 (citing to Complaint in Texas Action ¶¶ 25, 32, & 36) Yet this is pure surmise by TCS, since the paragraphs of the Complaint in the Texas Action that are

---

[5] TCS notes that "'prior litigious conduct is one circumstance to be considered in assessing whether the totality of circumstances creates an actual controversy.'" (Opp. at 3 (quoting *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1341 (Fed. Cir. 2008)) Yet, despite the existence of prior litigious conduct by the defendant in *Prasco*, the Federal Circuit held that no controversy existed. *Id.* *See also Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1382, 1385 (Fed. Cir. 2010) (same).

cited by TCS do not mention any discussion regarding licenses. See ¶ 25 ("Plaintiff contacted AT&T in written correspondence regarding Plaintiff's wireless location technology and patent applications"); ¶ 32 (same regarding Sprint Nextel"); ¶ 36 (same regarding Verizon). These paragraphs are susceptible to interpretations other than an invitation by TracBeam to license un-patented technology,[6] such as the interpretation that TracBeam contacted defendants to co-develop technology.

Because past events surrounding the letter do not create adverse legal interests, TCS must rely upon the words of the letter to create Article III standing. But in its Motion to Dismiss, TracBeam distinguished its six-sentence letter to TCS from several cases arising from the Federal Circuit and this District in which correspondence from a patent holder supported the finding of an adverse legal interest. (Motion at 5-6) TracBeam has also cited a case from the Tenth Circuit in which the district court held that innocuous letters from a patent holder failed to establish standing. (Motion at 6 n.4)

In its Opposition, TCS has failed to identify any case in which a court has found subject-matter jurisdiction based on correspondence as benign as that from TracBeam to TCS. Instead, TCS cites to the Federal Circuit's statement in *Arris Group* that "a specific threat of infringement litigation by the patentee is not required to establish jurisdiction, and a declaratory judgment action cannot be defeated simply by the stratagem of a correspondence that avoids magic words such as 'litigation' or 'infringement.'" (Opp. at 8 (quoting *Arris Group*, 619 F.3d at 1379) (some internal quotation marks omitted)). But in *Arris Group*, the patent holder "explicitly and repeatedly singled out [the supplier's] products used in [the customer's] network to support its infringement

---

[6] Without citing any support, TCS expands upon its implausible surmise by referring to "TracBeam's apparent attempt to secure licenses from various entities as early as the filing of its provisional application, before it had secured any legal patent rights." (Opp. at 10)

9

contentions." *Id.* at 1377. There is no comparable allegation here.[7] TCS fails to identify any aspect of the correspondence that would support an adverse legal interest. Under TCS's logic, any communication by a patent holder to a company could create an adverse legal interest.

TCS may have attempted to limit the result of its logic by emphasizing that TracBeam's letter was signed by the inventor of the Patents. (Opp. at 9) Yet TCS does not explain why an inventor should be prevented from publicizing his invention. To the contrary, a primary policy underlying the patent system is to make inventions known to the public. *See LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 433 F.3d 1373, 1375 (Fed. Cir. 2006) ("The whole purpose of a patent specification is to disclose one's invention to the public. It is the quid pro quo for the grant of the period of exclusivity. The need to tell the public what the invention is, in addition to how to make and use it, is self-evident."). Nor does TCS explain why TracBeam's letter becomes litigious merely because the inventor of the Patents is a patent agent and prosecuted the patents before the PTO. (Opp. at 9) Accordingly, the totality of the circumstances does not support subject-matter jurisdiction in this case.

### III. Conclusion

The Court should dismiss this action under Fed. R. Civ. P. 12(b)(1) because TCS has failed to carry its burden of establishing the existence of an Article III case or controversy and has inappropriately attempted to add new allegations to its Complaint via its opposition brief.

---

[7] TCS also cites to *Vanguard Research, Inc. v. PEAT, Inc.*, 304 F.3d 1249 (Fed. Cir. 2002) and *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953 (Fed. Cir. 1987). (Opp. at 3, 8) Yet those cases only emphasize the innocuousness of TracBeam's letter to TCS. *See Vanguard Research*, 304 F.3d at 1255 (explaining that patent holder had previously sued the declaratory-judgment plaintiff for misappropriation of trade secrets regarding the technology at issue in the patents and had notified both the plaintiff and its customers that they were using the patent holder's technology without a license); *Goodyear Tire*, 824 F.2d at 956 n.5 (explaining a representative of the defendant (Goodyear) had told they "would have to talk about infringement of the patents by Goodyear and possible licensing").

10

Dated: November 28, 2011

Respectfully submitted,

By: /s/ Jonathan Gottfried

Gregory S. Dovel
CA State Bar No. 135387
Email: greg@dovellaw.com
Jonathan Gottfried
NY State Bar No. 4269163
Email: jonathan@dovellaw.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Telephone: 310-656-7066
Facsimile: 310-657-7069

By: /s/ Tracy L. Ashmore

ROBINSON, WATERS &
O'DORISO, P.C.
1099 18th Street, Suite 2600
Denver, Colorado 80202-1926
Telephone: (303) 297-2600
Facsimile: (303) 297-2750
tashmore@rwolaw.com

# CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of November, a true and correct copy of the foregoing **Defendant TracBeam, L.L.C.'s Reply in Support of Its Motion to Dismiss** was duly filed via the CM/ECF system and served electronically and/or via U.S. Mail, postage prepaid, addressed to the following:

Victor M. Morales
McElroy, Deutsch, Mulvaney & Carpenter, LLP
5613 DTC Parkway, Suite 1100
P.O. Box 4467
Greenwood Village, CO 80 155-4467

Edward A. Penninglon
Stephanie D. Scruggs
Sid V. Pandit
Murphy & King
Professional Corporation
1055 Thomas Jefferson Street, Suite 400
Washington, D.C. 20007

/s/ Kristi Kellow
Kristi Kellow